NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0235n.06
Filed: March 29, 2007

No. 06-3531

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

SHPETIM SHJEFNI,                                )
                                                 )
    *Petitioner*,                              )
                                                 )
MARINELA DASHI,                                  )
                                                 )    ON PETITION FOR REVIEW
    *Petitioner*,                              )    FROM THE BOARD OF
                                                 )    IMMIGRATION APPEALS
v.                                               )
                                                 )    **O P I N I O N**
ALBERTO GONZALES,                                )
                                                 )
    *Respondent*.                              )

BEFORE:    COOK and McKEAGUE, Circuit Judges, and EDGAR, District Judge.[*]

**McKEAGUE, Circuit Judge.** Shpetim Shjefni and his wife Marinela Dashi petition for

review of the decision of the Board of Immigration Appeals (the "BIA") denying them both asylum

and withholding of removal. For the reasons stated below, we affirm the decision of the BIA.

## I. BACKGROUND

Shjefni and his wife left their home in Shkoder, Albania for the United States on September

15, 2000. On April 25, 2001, the two applied for asylum on the basis that Shjefni had been subject

to detentions and physical mistreatment at the hands of Albanian Socialist Party officials. A hearing

_____

[*]Honorable R. Allan Edgar, Senior United States District Judge for the Eastern District of
Tennessee, sitting by designation.

on Shjefni and Dashi's asylum applications was held on December 22, 2004, before the Detroit Immigration Court. At the hearing, Shjefni signed his asylum application under oath, having first reviewed it with a translator for accuracy. He testified that Socialist Party operatives blew up his front gate; that in 1997 he was detained for several hours at the local police station and asked for the names of local organizers of the Democratic Party, of which he was a member, during which time he was pushed and struck; that he was detained for an hour or so on a later date and asked the same questions; and that two months before he left for Albania, he was again detained at the police station and asked for the names of local Democratic Party leaders. On this last occasion, he was held for one to two weeks. He was again pushed and struck when he would provide no information, and told that if he did not become a spy for the Socialist Party by September 15, 2000, he or his family would be killed. He also testified that during this final detention, Socialist Party agents searched his home, destroyed some of his property, and were hostile to his wife and his parents.

The Immigration Judge denied both asylum and withholding of removal, finding that Shjefni was not credible and that his testimony therefore was insufficient to meet the burden of proving past persecution; that even if he were credible, the events he described would not entail past persecution; and that in any case, the conditions in Albania had changed significantly since Shjefni left there.[1] The denial of asylum became final when it was adopted by the BIA on March 28, 2006. The BIA

---

[1]The Immigration Judge noted that if Shjefni were granted asylum, Dashi, as his spouse, would be entitled to the same status, and explained that his "decision will mostly focus on his story, with discussions about his wife where necessary or appropriate." Opinion at 2-3. The BIA likewise focused on Shjefni, although the notice of appeal to the BIA was filed in the names of both Shjefni and Dashi.

decision found, contrary to the Immigration Judge's decision, that the events Shjefni described would constitute past persecution. However, the BIA agreed that Shjefni's testimony was not credible, and that conditions in Albania have changed such that Shjefni and Dashi would no longer have a well-founded fear of persecution should they return. Shjefni and Dashi petitioned for review of the BIA decision in this court.

## II. PAST PERSECUTION

### A. Credibility

The BIA determined that Shjefni had not established past persecution because the evidence he offered in support of past persecution was not credible. This court set forth the standard of review for credibility determinations in *Shkabari v. Gonzales*, 427 F.3d 324 (6th Cir. 2005):

> We review adverse credibility determinations under the substantial evidence test. In the immigration context, that test has been construed to allow reversal only if "the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." This standard has since been codified by regulations that allow this court to reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." Despite our deferential review of adverse credibility determinations, an IJ must support that determination with specific reasons. Additionally, an adverse credibility determination "must be based on issues that go to the heart of the applicant's claim." Indeed, "if discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility."

*Id.* at 329 (citations omitted) (quoting 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Sylla v. INS*, 388 F.3d 924, 925, 926 (6th Cir. 2004)).[2] "When the BIA adopts the

---

[2]Following the REAL ID Act of 1995, credibility is determined "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). However, the effective date of the relevant portion of the Act is May 11, 2005, and Shjefni applied for asylum in 2001. Therefore, the new standard does not apply to him. *Amir*

reasoning of the I[mmigration] J[udge]," this court reviews the Immigration Judge's decision directly. *Denko v. INS*, 351 F.3d 717, 723, 726 (6th Cir. 2003). The BIA here adopted the Immigration Judge's reasoning regarding Shjefni's credibility.

Some of the inconsistencies the Immigration Judge noted within Shjefni's testimony and between his testimony and his application were not actually inconsistencies, or regarded minor details irrelevant to the basis of his asylum application. *See Vasha v. Gonzales*, 410 F.3d 863, 869 (6th Cir. 2005) ("Where the credibility determination is based on inconsistencies unsupported in the record, we have reversed the determination."); *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005) ("[O]missions may form the basis of an adverse credibility determination [only if] . . . they are substantially related to the asylum claim.").

However, there are at least two significant inconsistencies in Shjefni's testimony that a reasonable adjudicator could find undermined his credibility: namely, his contradictory testimony regarding whether he had been detained by the police in September of 1998 (his asylum application stated that he had been detained), and the discrepancy between his asylum application and his testimony regarding whether he had been physically mistreated during his July 2000 incarceration. His testimony also contained less significant inconsistencies regarding whether he had been detained in 1990 for half a week or a whole week, whether his 1997 detention occurred in April or June, whether his door or his gate was bombed, and on what date his July 2000 detention began. As this court noted in *Guang Run Yu v. Ashcroft*, 364 F.3d 700, 704 (6th Cir. 2004) (quoting *Senathirajah*

_____

*v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006).

*v. INS*, 157 F.3d 210, 221 (3d Cir.1998)), minor inconsistencies that of themselves are not sufficient to undermine credibility may nevertheless bolster an adverse credibility determination if more significant inconsistencies also exist. Based on the inconsistencies in Shjefni's testimony, a reasonable adjudicator would not be "compelled to conclude" that Shjefni was credible, and therefore this court must affirm the Immigration Judge's adverse credibility determination.

### B. Corroboration

This court explained the significance of corroboration in *Vasha*:

> While "the testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration," we have upheld the BIA's rule that "where it is reasonable to expect corroborating evidence . . . the absence of such corroborating evidence can lead to a finding that an applicant has failed to meet h[is] burden of proof." We have noted that "supporting documentation must be provided only if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers."

410 F.3d at 871 n.3 (citations omitted) (quoting 8 C.F.R. § 1208.13(a); *Dorosh v. Ashcroft*, 398 F.3d 379, 382-83 (6th Cir. 2004)).

Shjefni provided as corroborating evidence only his marriage license to Dashi, his Democratic Party membership card,[3] and a letter purportedly from the Anti-Communist Political Society attesting to Shjefni's membership. Both the marriage license and the letter are accompanied by English translations labeled "Republic of Albania Notary Shkoder," and a signed and sealed

---

[3]The card bears an issue date of April 12, 1991. Shjefni testified that his father obtained the card for him after Shjefni left Albania in 2000, and the picture on the card appears to be from that time. He testified that the issuing authority must have back-dated the card to the time he became a member of the Democratic Party. However, the Immigration Judge was entitled to find this explanation problematic, and the card unreliable as corroborating evidence.

authentication of the translator's signature. *See Gjoni v. Gonzales*, 168 F. App'x 54, 59 (6th Cir. 2006) (finding "problematic as corroborative evidence" documents the origin of which is not authenticated); *see also Qafalijaj v. Ashcroft*, 107 F. App'x 614, 622 (6th Cir. 2004). However, these documents are of limited value in corroborating Shjefni's testimony. His marriage to Dashi is not disputed. The letter from the Anti-Communist Political Society purports to confirm his status as a Democrat and Anti-Communist, but does not address any of the allegations of mistreatment which would qualify him as a refugee.

The Immigration Judge also took issue with Shjefni's failure to provide records corroborating his 1997 medical treatment or a letter from his local Democratic Party leader in Albania confirming that Shjefni had been detained and otherwise persecuted by Socialist Party operatives. While it is "not reasonable to expect [the applicant] to have . . . medical records pertaining to incidents that occurred more than nine years ago when Albania was ruled under a communist regime,"[4] *Vasha*, 410 F.3d at 871 n.3, it was reasonable for the Immigration Judge to find implausible Shjefni's asserted reasons for failing to obtain a letter of confirmation from his local Democratic Party leader. He claimed that he did not want to contact the local leader because he did not want Socialist Party operatives to discover that he had done so. However, Shjefni's father visited another Democratic Party official to obtain Shjefni's Democratic Party card after Shjefni came to the United States, and Shjefni conceded that it would only have taken him a week or two to contact his local leader through his father. *See id.* at 871 n.3 ("'[S]upporting documentation must be provided only if it is of the type

---

[4]The *Vasha* court referred to incidents in 1996; the incidents here occurred in 1997, when, according to the government's evidence, Albania was still under a communist regime.

that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers.'") (quoting *Dorosh*, 398 F.3d at 383). Shjefni also failed to call his wife as a witness, although it would appear that he had at one point intended to do so.

In sum, Shjefni's testimony was inconsistent regarding at least two significant matters and several more minor details. Therefore, "[b]ased on the administrative record, a reasonable adjudicator would not be compelled to find [Shjefni] credible." *Pilica v. Ashcroft*, 388 F.3d 941, 952 (6th Cir. 2004). Shjefni's proffered corroboration appears to be insufficient to demonstrate persecution given that his testimony was not credible; the proffered corroboration did not support his allegations of mistreatment; and he failed to offer corroboration that clearly was at his disposal. Thus, he did not sustain his burden under 8 C.F.R. § 1208.13(a) of proving that he is a refugee. Because Shjefni did not sustain his burden, he is not entitled to asylum, 8 U.S.C. § 1158(b)(1), and this court need not reach the question of whether there has been a fundamental change in the political circumstances in Albania.

### III. WELL-FOUNDED FEAR OF FUTURE PERSECUTION

The standard of review for Shjefni's claim that he had a well-founded fear of future persecution is also the substantial evidence test. *Ivezaj v. INS*, 84 F.3d 215, 221 (6th Cir. 1996). Shjefni argues in his petition for review that he has a well-founded fear of future persecution under 8 C.F.R. § 1208.13(b)(2).[5] He bases this argument on the assertion that "the Socialist Party is still

---

[5]The Immigration Judge analyzed Shjefni's claim to determine whether he established past persecution under 8 C.F.R. § 1208.13(b)(1), which is consistent with the focus of Shjefni's

powerful" and the speculation that it "could be re-elected . . . as the ruling party in the future."

Appellant's Brief at 15.

The assertion that the Socialist Party is still powerful and therefore would subject him to persecution is contradicted by the Country Report, which states that the politically-motivated detentions and murders Shjefni professes to fear are not currently occurring in Albania. *See Cela v. INS*, 107 F. App'x 582, 584 (6th Cir. 2004) (affirming Immigration Judge's finding of no well-founded fear of future persecution because "the state department's country reports show that [the applicant] has no reasonable basis to fear his return"). Shjefni's assertion that conditions might change if the Socialist Party again became the majority party are purely speculative. The "clear probability" of persecution required for asylum is "'more than a matter of [an alien's] own conjecture.'" *Dally v. INS*, 744 F.2d 1191, 1195 (6th Cir. 1994) (quoting *Kashani v. INS*, 547 F.2d 376, 379 (7th Cir. 1977)). Thus, Shjefni's profferred reasons are insufficient to establish that he had a well-founded fear of future persecution, let alone that the evidence compelled such a result and the Immigration Judge should be reversed for failing to find such a well-founded fear.

## IV. CONCLUSION

For these reasons, the denial of asylum and withholding is **AFFIRMED**.

---

testimony. The Immigration Judge's opinion did not address whether Shjefni has a well-founded fear of future persecution; Shjefni argues on appeal that he does. This is an issue on which he would have the burden of proof under § 1208.13(b)(2)(C)(iii).